Judge, I'll put us back on the record. Yeah, please do. The next case, number 21-1394, Luis Molinari-Fernandez et al. versus BMW of North America, LLC. At this time, would counsel for the appellant please introduce himself on the record to begin? I am Ruben Negaglioni. I represent the plaintiff and appellants. Basically, this case deals with a product liability situation in which no one knows the exact cause of the fire that burned partially plaintiff's house. We do know that a BMW caught fire while it was being charged from the receptacle, electrical receptacle, in the garage. We know that the fire marshal concluded that the fire started in the engine of the BMW. He doesn't know the exact cause that produced the fire. He does assert... Just to be precise, when you say the engine, I thought the phrase was the area of the engine. The area of the engine, yes. That might be... Well, he said the motor. What? The fire marshal talked about the motor, not the engine. And he said that the... I thought the key point was the area of as opposed to just the engine or the motor. The area of the motor. That's what he said. Okay. So I'm corrected on that. Well, I think there's a difference between saying the cause is the engine and the cause is the area of the engine. Yes. Now, he also testified... Well, he also reported that he examined the garage. And he saw that the ceiling of the garage was actually burned, heavily burned. And he concluded that happened because the fire started in the motor of the BMW. On the other hand, he also examined the electrical outlet in the garage. The electrical outlets in the garage received fire from external sources, not internal sources. He also concluded that the outlet did not arc, nor did it short-circuit it. And in addition to that, an electrician examined the electrical system of the house. After the incident, the day following the incident, and he concluded that the electrical system was working correctly. And at no time did the breakers in the main electrical box trip. On the basis of that, I believe that the... Puerto Rican product liability law, which follows very closely California's product liability law, a circumstantial case has been made of a defect in the automobile. And pursuant to the consumer's ordinary expectations as to the safety of that product, when being charged as they usually are charged through the electrical system of the house, it should not... No one could expect that it would fire up or that it would burn partially the house and the contents. So in that sense, although we do not have an expert to testify on our behalf, I believe that we have established a circumstantial case of a product liability defect and as a result of a fire occurred and damaged a plaintiff's house. Essentially, that's our contention. When we look back at the development of the product liability law from the early 60s, and we have to remember that California was the leading state in addition to New Jersey on the development of a product liability law, we can see that the basic concern that the California Supreme Court had when it decided the Greenman case, Greenman v. Yuba, was twofold. Number one, the burden on a plaintiff to prove fault or negligence. And secondly, the evidentiary elements or burdens that a plaintiff faces in this type of cases. Now, when we look back now... Counsel, the appellee points out a couple of problems. Specifically, it was an improper cord that was being used to charge and also the cord had a tight connector. And it references the marshal's report, which indicates that it may have started in the area of the motor, but that the marshal couldn't determine the cause. The marshal could not determine the fire, the exact cause of the fire. This isn't a situation where there was just spontaneous combustion. There was the introduction of an improper cord with the band around it. There was an electrical cord, an extension that was used. Now, the BMW booklet warns against the use of external extensions. It was used. No one can deny that. But if the fire started, as it is suggested by defendant's experts, then if the fire started in the electrical extension, then the outlet would have shorted and the breakers in the main electrical box would have cracked because a short circuit would have occurred. Well, do we have a professional opinion to that? Your Honor, I believe that that's ordinary knowledge, that the breakers on the houses in the main electrical box in the house is supposed to crack if there is a shortage in the electrical extension. It didn't happen. As a matter of fact, the fire marshal examined the receptacles in the garage and he found that they were in proper order. They had received a burn as a result of the radiation generated by the fire that took place in the garage. So, we don't have any evidence. So, Counselor, you're saying shortage and you're assuming that the court could only have produced the fire if there was a shortage. We don't have an opinion as to that either. No, I do not. I do not, except I do have the report of an expert electrician, a licensed electrician, about the electrical system on the house. I do have the report of a fire marshal that concluded that the reason there was a fire was that the fire started in the area of the motor of the BMW. That I do have. Where does the cord get plugged in on the car? Pardon me? Where does this cord connect to on the car? The cord connected from the outlet to the electrical extension that came with the car and then connected to the charger that sends the electricity to the batteries of the car. And just where is that in relationship to the motor area or the engine area of the car? That's a, as I understand it, Your Honor, on the left-hand side of the car. How far away from the engine as such or the motor as such? I cannot tell you. But there are photographs that, particularly on the expert report that defendants submitted, there are photos that do show. The basic thing is that there's some contention, as I'm understanding your opponent's position, that the introduction of the cord could be the cause of the engine combusting. That's what the expert, defendant's expert suggests. But. So how is that necessarily refuted by the point you're making about the shorting? I don't quite follow that. In other words, if the idea is that the introduction of this cord will cause the engine to combust. He doesn't explain that. Well, I know then, but I'm not explaining it well either, but no one seems to be, which is maybe an argument for why an expert coming in would be good. Well, the fire marshal actually concluded that the fire started in the area of the motor. But he can't rule out the possibility that that had something to do with the introduction of the cord. No, we cannot rule that out. Defendant's expert did not rule it out. But defendant's expert reviewed the car. He didn't see the scene when it happened. He reviewed the car a year and a half after the accident occurred. And he actually says that the investigation that he carried out was not according to the standards of the industry. Judge Lopez, did you have anything? Thank you. No, nothing. Thank you. Thank you. At this time, would attorney for the appellee please introduce himself on the record? May it please the court, Antonio Inoki-Franco on behalf of appellee BMW NA. Your Honor, I believe this case is relatively simple. The plaintiff was granted a term to name a liability expert. He failed to do so. He did not name any. And when the discovery period was over, we filed a motion for submission. And it was granted by Judge Jay Garcia Gregory. Now, going to some of the questions that were made in relation to the extension. Not only did a plaintiff use an extension court which specifically is prohibited and is advised not to do so by the owner's panel, which is part of the evidence submitted. It says, do not extend the extension of the vehicle. There is a risk of fire and injury. Not only did they use an old extension court, 15 feet long, to do this, but they used an old extension court which had a tie wrapped, tightly wrapped around it. There are photos in the record, which, according to our expert, could not be discarded as the cause of the fire. The plug where you charge this car is right in the front left fender where the plaintiff's wife saw fire. And that is exactly where it connects, where the extension court is precisely. So, obviously, the extension court was instrumental in producing this fire. It was not only inappropriate, but advised against it. Plaintiff pretends, without an expert, to try to use the consumer expectation test in this case, which is totally inapplicable because this case deals with a complex hybrid vehicle. At the actual point of the connection where it hooks up, where the extension court hooks up to the car, is there anything in the record that shows whether there was any burn damage right at that point? Yes, that area of the car was burned. And I'm just looking at the photos right now. In our expert report, which is on the record, it clearly shows the area. I'm just looking for it right now. If it's in the record. It's in the record. So, it's very clear that that's where the fire at least was seen by one of the witnesses. Again, going back to the consumer expectation test, this is totally unapplicable to this case. This case deals with a complex situation where simply the consumer would not know what to expect. And in addition, he used an extension which is totally prohibited. The danger of a fire and the risk of a fire is clearly explained in the manual. With respect to the risk utility test, which is the second prong really of the risk utility, the plaintiff has to establish that the design of the product was the proximate cause of the fire. In this case, nobody has talked about the design. The plaintiff has not even mentioned what is wrong with the design or how did this design bring about the fire or the damage. So, again, there's no shifting of proof to the defendants because they have not filled in the first phase of the risk utility test. Plaintiff has provided no evidence whatsoever to prove their case. The weight of the evidence is on the plaintiff to establish the defect and the proximate cause. They have grossly failed to do so. As Judge Garcia put it in his opinion and order, given the lack of expert evidence that would allow the jury to undertake such analysis and or identify the supposed defect in this case, the court finds that plaintiffs have failed to satisfy the burden of proof. Quite the opposite. They simply present the speculatory evidence that does not adequately controvert defendant's expert report nor establish a genuine issue of material facts and thus cannot defeat summary judgment. Judge Lopez, do you have any further questions? Nothing. Thank you. That is all, Your Honor, unless there's any other questions. Fine. Thank you. Thank you. That concludes argument in this case.